[No. B147135. Second Dist., Div. Three. Aug. 29, 2002.]

JOE DEOCAMPO, Plaintiff and Appellant, v.
RICHARD S. AHN et al., Defendants and Appellants.

## COUNSEL

Law Offices of David Drexler, David Drexler; Hart & Watters and Thomas L. Watters for Plaintiff and Appellant.

Reback, Hulbert, McAndrews & Kjar, Gregory M. Hulbert, Thomas F. McAndrews; Thelen Reid & Priest, Curtis A. Cole and Kenneth R. Pedroza for Defendants and Appellants.

Horvitz & Levy, S. Thomas Todd and H. Thomas Watson for California Medical Association, California Dental Association and California Healthcare Association as Amici Curiae.

OPINION

CROSKEY, J.—In this suit for personal injury based on allegations of medical malpractice, plaintiff Joe Deocampo (plaintiff) appeals from an amended judgment. Defendants Richard S. Ahn, M.D. and Melvin Belafsky, M.D. (Ahn, Belafsky, collectively defendants) have cross-appealed from the same amended judgment.[1]

The judgment was amended to include the court's decisions on certain postjudgment matters, and it is these that are the subject of this appeal. They relate to (1) the proper calculation of the credit due to nonsettling defendants for a plaintiff's prior settlement with the settling defendants, (2) the payment of the plaintiff's attorney's fees entirely out of the nonperiodized portion of the judgment, (3) the scope and extent of a plaintiff's right to prejudgment interest on the periodized portion of a judgment relating to future losses, (4) the proper analysis of a multiple plaintiffs' statutory offer to compromise and the effectiveness of such offer when it is conditioned upon the accuracy of a defendant's discovery representations regarding insurance coverage, (5) the impact of a settlement with some defendants on the calculation of prejudgment interest against the nonsettling defendants, and (6) the trial court's discretionary authority over the manner in which the damages for a plaintiff's future losses are periodized.

Our resolution of these issues requires only an amendment to the judgment. We therefore will amend the judgment and, as so amended, affirm it.

BACKGROUND OF THE CASE

In October 1995, plaintiff filed this medical malpractice suit, alleging that the medical treatment he received after he sustained a heart attack was negligent, and such negligence caused him to become a paraplegic. The paralyzing injury occurred in July 1995. Estela Deocampo, plaintiff's wife, also sued, alleging damages for loss of consortium. Ahn and St. Joseph Medical Center were named and served as defendants.

---

[1]Belafsky was not originally named as a defendant in plaintiff's action. He was added as a Doe defendant after plaintiff learned through discovery that he was defendant Ahn's employer at the time of Ahn's negligent medical treatment of plaintiff.

In April 1996, plaintiff and his wife (plaintiffs), served defendant Ahn with a Code of Civil Procedure section 998 offer to compromise.[2] The offer was not accepted.[3]

In June of 1997, plaintiff and his wife entered into a $1.5 million settlement with St. Joseph Medical Center, the hospital where he was being treated when he sustained his paralyzing injuries. That same month the trial court determined the settlement was made in good faith. The settlement did not specifically apportion the $1.5 million between plaintiff's past and future damages, nor between his economic and noneconomic damages. Nor was the settlement apportioned between plaintiff's claims and those of his wife.

By an unpublished opinion filed on February 10, 2000, this court reversed a judgment that had been entered in favor of Ahn after a jury concluded that while his treatment of plaintiff had fallen below the standard of care, such treatment was not a cause of any injury to plaintiff. Our review of the evidence convinced us that the jury's finding of no causation was not supported by substantial evidence, and therefore could not stand.[4] The evidence had established, to a reasonable medical probability, that had Ahn's treatment of plaintiff not fallen below the standard of care, plaintiff would

---

[2]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

[3]Section 998 provides, in part, that if a plaintiff makes an offer to compromise which is refused by a defendant, and the defendant does not receive a more favorable judgment, the court, in its discretion, may require the defendant to pay certain of the plaintiff's litigation costs.

In the instant case, plaintiffs made a "policy limits" section 998 offer to compromise to defendant Ahn, stating they would compromise their claims against him for the greater of $1 million or the sum of his liability policies that covered their claims against him. According to a declaration from plaintiff's attorney, filed in support of plaintiff's motion for an award of prejudgment interest, the attorney spoke with Ahn's defense counsel and informed him that if Ahn accepted the offer to compromise, plaintiffs would also dismiss defendant Belafsky, who, as noted above, was Ahn's employer. Ahn did not accept the offer.

In that same declaration, plaintiff's attorney stated that while the plaintiffs were negotiating a settlement with another defendant, Belafsky and Ahn served a joint section 998 offer on plaintiffs, offering plaintiffs no money, a waiver of costs, and an agreement that they would not sue plaintiffs for malicious prosecution. Later, while the case was pending before this court in plaintiff's previous appeal, plaintiff made a $250,000 offer to settle the case with Ahn, which was not accepted.

[4]Indeed, we described the state of the evidentiary record in the following terms: "The record demonstrates that Dr. Ahn's negligence resulted in an extensive delay (nearly eight hours) in the commencement of Mr. Deocampo's surgery, and that such delay contributed to Mr. Deocampo's permanent paralysis. However we might choose to define 'substantial,' Dr. Ahn's negligence played, at the very least, a significant part in this tragic result. This is more than enough to satisfy the 'substantial factor' test. *No other conclusion is supported by any evidence in this record.* Thus, we must conclude that the jury's finding of no causation is not supported by substantial evidence and cannot stand." (Italics added.)

have obtained a better result. Thus, we returned the case for a new trial on the limited issue of the damages to be paid by defendants.[5]

Following remand, and in response to a pretrial motion filed by defendants concerning Civil Code section 1431.2's provisions precluding joint liability among defendants for a plaintiff's noneconomic damages in personal injury, wrongful death and property damages cases, plaintiff and his wife stated that if such motion were granted, they would waive their pursuit of noneconomic damages. Despite their opposition, the motion was granted, and, on August 7, 2000, plaintiff's wife dismissed her portion of this suit, which had sought only noneconomic damages. *Thereafter, plaintiff did not pursue any claim for noneconomic damages from defendants.*[6]

Upon retrial, the jury returned a special verdict on September 22, 2000, on the issues of past and future expenses, including medical expenses, and past and future lost wages. A judgment on the special verdict was signed and filed on October 18, 2000.[7]

The parties then made a series of postjudgment motions. The motions relevant to this appeal were (1) Ahn's motion to determine the validity of the section 998 offer to compromise which plaintiffs had made to him in April 1996; (2) defendants' motion for (a) a section 877 setoff for plaintiff's pretrial settlement with St. Joseph Medical Center,[8] and (b) section 667.7 periodic payments of the jury's award; (3) plaintiff's motion to fix prejudgment interest pursuant to Civil Code section 3291;[9] and (4) plaintiff's motion for section 667.7 periodic payments of the jury's award.

---

[5]In our opinion of February 10, 2000, we ordered that: "The judgment is reversed and the matter is remanded with directions to the trial court to enter an order adjudicating the issue of liability in favor of the plaintiffs and to then conduct a new trial limited to this issue of damages and any issues raised under Civil Code section 1431.2. . . ."

[6]Civil Code section 3333.2 addresses suits against health care providers for injuries based on professional negligence. Subdivision (b) of that statute limits a plaintiff's recovery for noneconomic damages to $250,000. According to plaintiff, since section 3333.2 limited his wife's loss of consortium damages to $250,000, and his own noneconomic damages to $250,000, then $500,000 of the $1.5 million dollar settlement with St. Joseph Medical Center was attributable to noneconomic damages. Plaintiff also states that because of (1) the $500,000 noneconomic damages cap, and (2) their having received the $1.5 million settlement, he and his wife decided to dismiss her cause of action and only seek economic damages in the retrial of the case.

[7]By its special verdict, the jury awarded plaintiff $1 million in past medical and other expenses; $122,000 in past lost earnings; $9,312,335 for future medical and other expenses (which the jury found has a present cash value of $3,529,375) and $650,900 in lost future earnings (which the jury found has a present cash value of $316,800).

[8]The settlement benefited both St. Joseph Medical Center and the defendants. Under section 877, defendants' liability to plaintiff was reduced by the amount of the settlement.

[9]Civil Code section 3291 provides that in personal injury suits, if the plaintiff's section 998 offer to compromise is not accepted by the defendant prior to trial or within 30 days of the

The trial court ruled with respect to these motions as follows: (1) plaintiff's section 998 offer of compromise on April 12, 1996, was valid and it was not accepted by Ahn; therefore, plaintiff was entitled to prejudgment interest from that date as provided in Civil Code section 3291; (2) the defendants were granted a setoff for the amount of plaintiff's settlement with St. Joseph Medical Center ($1.5 million) and such settlement was set off first against plaintiff's past economic damages and then against the prejudgment interest due to plaintiff; (3) the total amount of prejudgment interest was determined to be $1,745,211.17; this amount was calculated by determining the present value of the entire judgment ($4,968,175), computing interest at 10 percent from April 12, 1996 (the date of the section 998 offer), to June 20, 1997 (the date of the settlement with St. Joseph Medical Center), and adding that number ($590,736.48) to the interest due on the judgment (less the settlement amount), for the period from June 21, 1997, until October 18, 2000 ($1,154,474.69); (4) the portion of the judgment that reflected plaintiff's future economic damages would be periodized pursuant to section 667.7; the future medical damages found by the jury ($9,312,335) were to be paid in *equal* monthly installments for a total period of 336 months (the period of plaintiff's life expectancy) and the future lost earnings found by the jury ($650,900) were to be paid in *equal* monthly installments over a total period of 240 months (the estimated remaining work life of a 45-year-old man).[10]

---

date it is made (whichever first occurs), and the plaintiff obtains a more favorable judgment, "*the judgment shall bear interest* at the legal rate of 10 percent per annum *calculated from the date of the plaintiff's first offer* pursuant to Section 998 . . . which is exceeded by the judgment, *and interest shall accrue until the satisfaction of judgment.*" (Italics added.) We hereafter sometimes refer to the interest authorized by Civil Code section 3291 as "prejudgment interest."

Civil Code section 3291 has a two-fold purpose. One, it is meant to encourage settlements. Two, it *compensates* personal injury plaintiffs for their loss of the use of their compensatory award during the prejudgment period; the interest makes the plaintiff whole with respect to the loss of use of funds. (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 663-664 [25 Cal.Rptr.2d 109, 863 P.2d 179].)

The prejudgment interest that accrues *prior* to the judgment is not intended to be included in the judgment itself so as to enhance possible *post*judgment interest. There is no compounding of interest. Rather, prejudgment interest simply accrues on "the judgment" from the date of the plaintiff's section 998 offer to the date the judgment is satisfied. It is a single award of interest. (*Hess v. Ford Motor Co.* (2002) 27 Cal.4th 516, 530-533 [117 Cal.Rptr.2d 220, 41 P.3d 46]; *Mendez v. Kurten* (1985) 170 Cal.App.3d 481, 487 [215 Cal.Rptr. 924].)

[10]The trial court's minute order of December 18, 2000, reflected that from the amount of the judgment that was payable immediately, plaintiff would be able to "satisfy his obligation for attorney fees and costs incurred, thus again maximizing the available funds for [his] future needs. Note: The Court has calculated statutory attorneys' fees pursuant to Business & Professions Code, section 6146, to be $591,868.00 if deduction is made for the St. Joseph's settlement and CCP 998/Civil Code 3291 interest is not considered, and $856,742.00 if interest is considered."

On January 4, 2001, the trial court filed an amended judgment to reflect the changes made by its nunc pro tunc order of December 18, 2000.[11] Thereafter, the parties filed their respective appeals from this amended judgment, by which they challenge the rulings reflected in the order of December 18, 2000, that were incorporated in the amended judgment.[12]

## ISSUES RAISED BY THIS APPEAL

### 1. *Plaintiff's Appeal*

Plaintiff challenges the way in which the trial court utilized the $1.5 million settlement that plaintiff and his wife entered into with St. Joseph Medical Center. The court used the *entirety* of such settlement as an offset against the combined dollar amount of (1) the jury's award for plaintiff's *past* medical and other expenses ($1 million), (2) the jury's award for plaintiff's *past* loss of earnings ($122,000), and (3) a *portion* ($378,000) of the $1,745,211.17 of *prejudgment interest* that had accrued under Civil Code section 3291. Plaintiff contends the court should have apportioned the settlement according to the ratio of past and future economic damages determined by the jury, but instead it "wip[ed] out" his "up-front recovery for past damages."

Plaintiff also contends the court should have ordered that a portion of his attorney's fees and costs come from his future damages award rather than from the remainder of the prejudgment interest to which the court found he is entitled. Additionally, plaintiff asserts the court erred when it ruled that the prejudgment interest would stop accruing prior to defendants' satisfaction of the judgment.

---

[11]The amended judgment provided that, upon entry of the judgment, plaintiff "shall recover from the defendants

"1. $1,367,211.17 (payable immediately by Dr. Ahn only [for the prejudgment interest that was not offset by the St. Joseph Medical Center settlement])

"2. Monthly [periodic] payments for November 2000 and December 2000 [that had already come due] in the sum of $60,854.72 (payable immediately with interest from the date the installments were due)

"3. Costs in the sum of $125,886.46 (payable immediately)

"Total amount payable immediately $1,493,097.63 which sum shall bear interest at the rate of 10% per annum until paid, pursuant to Civil Code section 3287 (which represents the sum of items 1 and 3 above).

"4. 334 consecutive monthly payments, commencing on January 1, 2001 (due the first day of each month) in the sum of $27,715.28 per month, representing payments for future economic damages.

"5. 238 consecutive monthly payments in the sum of $2,712.08 representing plaintiff's loss of future earnings."

[12]Presumably, the judgment was amended nunc pro tunc to October 18, 2000. The amended judgment does not specify a date, although the court's January 2, 2001 minute order states that the amended judgment would be entered "Nunc Pro Tunc as of 10/18/00."

## 2. *Defendants' Cross-appeal*

Ahn contends plaintiff's section 998 offer to him to compromise is unenforceable for purposes of awarding prejudgment interest to plaintiff. Ahn also argues that the court erred in its calculation of the prejudgment interest. Calculation errors are also alleged by defendants with respect to the court's determination of periodic payments for plaintiff's future damages.

DISCUSSION

## 1. *Plaintiff's Appeal*

### a. *The Trial Court Properly Used the $1.5 Million Settlement to Offset Damages Owed by Defendants*

The record establishes that (1) plaintiff received a settlement of $1.5 million from St. Joseph Medical Center, and (2) when the trial court credited that amount to the damages the jury awarded to plaintiff, it credited the bulk of the settlement to plaintiff's past lost wages and past medical and other expenses, which together totaled $1,122,000, and it credited the remainder ($378,000) to the $1,745,211.17 in prejudgment interest. As noted, plaintiff argues that this allocation "completely wiped out [his] entire up-front recovery for past damages."

To understand plaintiff's argument it is first necessary to review the relevant law applicable to periodic payments in medical malpractice cases. In suits against providers of health care services, section 667.7 requires a court to order that the *future* damages of the plaintiff be paid by periodic payments rather than in one lump sum payment, if the award equals or exceeds $50,000, and if one of the parties requests such periodic payments.[13]

The jury is required to designate the portion of its verdict that is attributable to the plaintiff's future damages. The trial court uses its discretion to determine the amount, frequency and duration of the periodic payments when it constructs a payment schedule. The gross amount of future damages is used to make the payment schedule, not the present value of the future damages. (*Holt v. Regents of University of California* (1999) 73 Cal.App.4th 871, 880 [86 Cal.Rptr.2d 752].)

Section 667.7 is intended to enable courts to provide for the needs of injured plaintiffs and their dependents for the length of time such monetary

---

[13]As already mentioned, both plaintiff and defendants requested the periodizing of the future economic damages awarded by the jury to plaintiff.

compensation is necessary. The goal is to prevent early dissipation of an award, and ensure that when the plaintiff incurs losses or expenses in the future, the money awarded to him will be there. While a precise match between future needs and the periodic payments is not necessary, there must be evidence to support the payment schedule developed by the court.

Section 667.7 also addresses plaintiffs who die prematurely after entry of a judgment providing for such periodic payments. Section 667.7 prevents such a plaintiff's survivors from receiving the periodic payments that the plaintiff would have received for his or her future *care* if he or she had not died prematurely, thus preventing the survivors from receiving a windfall of such money which would no longer be needed for the plaintiff's care. (*Holt v. Regents of University of California, supra,* 73 Cal.App.4th at p. 881.) Section 667.7 does not place such a blanket restriction, however, on the periodic payments for the future lost *wages* awarded to the plaintiff.

 Plaintiff asserts the court should have apportioned the St. Joseph Medical Center settlement money according to the ratio of past and future economic damages awarded by the jury, and had the court done so, defendants' offset credit against past economic damages and prejudgment interest would have been $150,000 rather than $1.5 million, and the risk of plaintiff's premature death would not fall on his survivors, who, under the present offset plan, will have no recovery for plaintiff's past economic damages if he dies prior to the point where the periodic payments ordered by the trial court match the amount of plaintiff's past economic damages. Plaintiff contends that "in the event of [his] premature death, all periodic payments ordered pursuant to section 667.7 will terminate and [his] family will be left with nothing."

We reject this analysis. First, the settlement money from St. Joseph Medical Center was more than sufficient to both pay plaintiff's past medical and other expenses determined by the jury to have been incurred by him, and to make up for his past lost wages. The award for past damages was not subject to periodizing. Moreover, using the settlement for the expenses and lost wages incurred by plaintiff between his paralyzing injury and the time the amended judgment was entered furthers the Legislature's intent that section 667.7 periodic payments be devoted to the plaintiff's *future* damages. "[A] procedure that provides for the periodic payment of future damages will further the fundamental goal of matching losses with compensation by helping to ensure that *money paid to an injured plaintiff will in fact be available when the plaintiff incurs the anticipated expenses or losses in the future.*" (*American Bank & Trust Co. v. Community Hospital* (1984) 36 Cal.3d 359, 369 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233], italics added.)

In sum, the $1.5 million settlement which plaintiff entered into in June 1997, and which was approved by the court that same month, was available for his expenses and lost wages between the date of his injury in July 1995, and the date of the amended judgment, January 2001. Indeed, in his opening brief, plaintiff states that at the time of his settlement with St. Joseph Medical Center, nearly all of his damages were future damages. By the time of the amended judgment, a portion of those damages constituted the very past damages that the trial court offset with the settlement money.

The cases upon which plaintiff relies do not support his position. In one case, the court rejected constitutional challenges to the validity of section 667.7, addressing equal protection, due process, right to a jury trial, and void for vagueness arguments. (*American Bank & Trust Co. v. Community Hospital, supra,* 36 Cal.3d 359.) In another case, the court rejected the section 667.7 periodic payment schedule the trial court had devised, but not because the trial court did not apply a past/future damages ratio to a settlement. (*Holt v. Regents of University of California,* supra, 73 Cal.App.4th 871.) Two of the cases have nothing to do with personal injury law. One concerns a hospital's claim to a "welfare exemption" from paying county property taxes (*Rideout Hospital Foundation, Inc. v. County of Yuba* (1992) 8 Cal.App.4th 214 [10 Cal.Rptr.2d 141]), and the other addresses the question whether a party has a right to challenge, by postjudgment appeal, a trial court's good faith settlement determination, when such party's pretrial petition for writ of mandate respecting that good faith settlement determination had already been summarily denied. (*Maryland Casualty Co. v. Andreini & Co.* (2000) 81 Cal.App.4th 1413 [97 Cal.Rptr.2d 752]). The other cases cited by plaintiff address the apportionment, between a settling defendant and a nonsettling defendant, of liability for economic and noneconomic damages pursuant to Civil Code section 1431.2's prohibition against joint and several liability for noneconomic damages. (*Espinoza v. Machonga* (1992) 9 Cal.App.4th 268 [11 Cal.Rptr.2d 498]; *Hackett v. John Crane, Inc.* (2002) 98 Cal.App.4th 1233 [120 Cal.Rptr.2d 662].) It is the very existence of this prohibition that requires courts to determine what portion of a settlement represents a plaintiff's economic damages and what portion represents his noneconomic damages. We are aware of no similar statutory requirement that settlements be apportioned between a plaintiff's *past and future* damages.

Finally, while section 667.7 prevents a plaintiff's survivors from receiving windfall periodic payments for the plaintiff's *care* after the plaintiff has died, there is no such restriction on a plaintiff's dependents receiving payments for lost wages. Section 667.7 provides that "money damages awarded for loss of future earnings shall not be reduced or payments terminated by reason of the death of the judgment creditor, but shall be paid to persons to

whom the judgment creditor owed a duty of support, as provided by law, immediately prior to his death."

The setoff allocation of the St. Joseph Medical Center settlement money by the trial court was entirely proper.

### b. *The Court's Provision for Attorney's Fees Was Proper*

We also reject plaintiff's contention that the trial court should have used a portion of the periodic payments of future damages to pay plaintiff's attorney's fees. The case upon which plaintiff relies does not support his position. In *Nguyen v. Los Angeles County Harbor/UCLA Medical Center* (1995) 40 Cal.App.4th 1433 [48 Cal.Rptr.2d 301], plaintiff's attorneys made a pretrial request that plaintiff's noneconomic damages and her accrued medical expenses be paid to her in a lump sum cash payment, and her future damages be paid in the form of periodic payments under section 667.7. After the judgment was entered, the attorneys realized that the lump sum payment would either not cover their fees, or would cover them but such use of the payment would not be in the plaintiff's best interest. However, amendment of the judgment was no longer possible. The *Nguyen* court recognized that leaving the attorneys to receive their fees in payments from each of the future period payments was less than satisfactory; indeed, the plaintiff might die prematurely and not receive enough periodic payments to enable the attorneys to receive all of their fees.

Here, the January 4, 2001, amended judgment provided for an immediate payment from defendant Ahn of $1,367,211.17 (the remaining prejudgment interest due from him), plus an immediate payment from Ahn and Belafsky of (a) the November and December 2000 periodic payments (totaling $60,854.72), (b) costs in the amount of $125,886.46, and (c) the January 2001 periodic payment of $30,427.36, for a grand total immediate payment of $1,584,379.71. This was more than sufficient to pay the fees and costs that plaintiff states in his opening brief were due his attorneys, namely $605,226.25. Payment of these fees and costs with the money immediately payable to plaintiff by Ahn and Belafsky is in keeping with the *Nguyen* court's observation that when a plaintiff's damage award is divided between an immediately payable cash payment and periodic payments of future damages, "[a]s a general rule, the preferable approach is to satisfy the attorney fees immediately out of the cash payment. This is not only the general practice in the community, it makes the most sense as a matter of legislative intent and public policy. The plaintiff's attorney has done what he or she was retained to do once the judgment has been entered. The case is over; the fee is earned." (*Nguyen v. Los Angeles County Harbor/UCLA*

*Medical Center, supra*, 40 Cal.App.4th at pp. 1444-1445.) The *Nguyen* court stated that if the lump sum payment is sufficient to pay the fees and costs, it is unnecessary to allocate any portions of the periodic payments to such fees and costs. (*Id.* at p. 1447, fn. 9.) The trial court's refusal to do so was thus not error.

 c. *The Trial Court Correctly Declined to Award Prejudgment Interest Past the Date of the Judgment*

By its amended judgment, the court awarded plaintiff prejudgment interest in the amount of $1,745,211.17. That interest was awarded from the date of plaintiff's offer to Ahn to compromise (Apr. 12, 1996), up to the date of the judgment that was entered, after we remanded this case for a determination of plaintiff's damages (Oct. 18, 2000).

The amended judgment specifically states that the trial court "decline[d] to award [prejudgment] interest on the unpaid future damages portion of the judgment." Plaintiff challenges this ruling. He contends the court was required to award prejudgment interest until the entire judgment is satisfied. He relies on the following italicized language in Civil Code section 3291: "the judgment shall bear interest at the legal rate of 10 percent per annum . . . and interest shall accrue *until the satisfaction of judgment.*" (Italics added.) Plaintiff is technically correct; he is entitled to interest on the judgment until it is satisfied. (*Hess v. Ford Motor Co., supra,* 27 Cal.4th at p. 531.)[14] However, this is a pointless argument as it has no real application in this case. Plaintiff overlooks that he has already been awarded and has been paid the full amount of prejudgment interest authorized by Civil Code section 3291. The trial court calculated the prejudgment interest based upon the entire judgment, except that the future damages were *reduced to present value.* That amount, $1,745,211.17, was awarded *and has already been paid.* This was the proper way to calculate the prejudgment interest on a judgment involving the periodized payment of damages for future losses. (See *Holt v. Regents of University of California, supra,* 73 Cal.App.4th at p. 878.)

However, general principles relating to *post*judgment interest applicable to *all* judgments control the amount of any interest to which plaintiff *may ultimately* be entitled. The only part of the judgment not yet paid relates to future damages and they are to be paid pursuant to section 667.7.

Pursuant to section 667.7, *periodic payments* (i.e., the future damages portion of the jury's award) are not immediately payable under the amended

---

[14]The time for which interest is owed includes the period of time an appeal is pending. (*Steinfeld v. Foote-Goldman Proctologic Medical Group, Inc.* (1996) 50 Cal.App.4th 1542, 1550 [58 Cal.Rptr.2d 371].)

judgment (except for (1) the payments that were due in the two months before the amended judgment was signed and filed, and (2) the periodic payment due the month the amended judgment was signed and filed). Therefore, interest will only accrue on each individual periodic payment *as that payment becomes due.* (*Schiernbeck v. Haight* (1992) 7 Cal.App.4th 869, 872-874 [9 Cal.Rptr.2d 716].) "The purpose of section 667.7 payments is to provide compensation for losses that are to occur in the future. [Citation.] A plaintiff suffers no detriment if the future damages portion of the award is not paid when judgment is entered because the injury for which the payment is intended to compensate has not yet occurred. By definition, therefore, a periodic payment due on some future date is not unpaid until that date. 'Interest is only awardable to compensate for a delay in payment and compensation for future needs involves no such delay.' [Citation.]" (*Id.* at p. 874.) If each periodic payment is made by defendants in a timely manner, there will be no more interest paid by defendants.

Thus, the trial court's determination that no additional prejudgment interest was required was correct.

## 2. *Defendants' Appeal*

### a. *Plaintiff's Offer to Compromise Under Section 998 Justified the Award of Prejudgment Interest*

The purpose of an offer to compromise is to encourage settlements prior to trial. The offer made by plaintiff and his wife states in relevant part that they, pursuant to section 998, offered "to accept judgment for the combined stated limits of all your insurance policies, of any kind, both primary and excess, known or unknown, which in any way provided coverage for the above-captioned case, or the sum of $1,000,000, whichever is greater. [¶] If at any time it is discovered that you have move [*sic*] insurance than previously disclosed, plaintiffs reserve, at their option, the right to vacate this offer or judgment should judgment be entered pursuant to said offer." This offer to compromise was made in April 1996.

Defendant Ahn articulates a variety of arguments as to why the section 998 offer to compromise should not have been used by the trial court as the basis for awarding plaintiff prejudgment interest on the judgment against Ahn. None of them, however, has any merit.

Section 998, subdivision (d) begins: "If an offer made by a *plaintiff* is not accepted . . . ." (Italics added.) ▇ Ahn contends plaintiffs' offer to compromise is invalid because it was made jointly by two plaintiffs. Ahn

argues that when an offer is made by only one plaintiff, then (1) the defendant knows the sum of money being demanded by the plaintiff, and (2) this facilitates a court's determination whether that plaintiff obtained a more favorable judgment. Whatever the general merits of that argument,[15] plaintiff's wife could only have recovered a maximum of $250,000 on her cause of action. Thus, the bulk of plaintiffs' section 998 offer was obviously meant for plaintiff himself. Moreover, the trial court could not have been confused about whether plaintiff obtained a more favorable judgment than that for which he offered to settle. Since the jury did not award plaintiff's wife any damages, it is clear that the damages the jury *did* award are far greater than the amount requested in the section 998 offer, less the maximum $250,000 that plaintiff's wife could have recovered.

We also reject Ahn's assertion that plaintiffs' offer was "illusory and would not have settled *the case*." (Italics added.) Ahn is attempting to interject ambiguity and confusion where there is none. There is no evidence that plaintiffs wanted to settle "the case" with their offer. Quite the opposite. It is clear to this court that plaintiffs wanted to settle with *Ahn*. Ahn's own court papers show that not all of the eventual defendants were even parties to the case at the time plaintiffs' section 998 offer was made, and that at least one of the other defendants had his own liability insurance to which plaintiffs could make a claim.

Ahn's court papers state that (1) Ahn answered the complaint on December 11, 1995; (2) plaintiff served him with interrogatories on March 18, 1996; (3) Ahn indicated in his answers to the interrogatories that he had only $1 million in liability insurance for plaintiffs' claim; (4) Ahn was deposed on April 9, 1996, the day after plaintiff received Ahn's answers to the interrogatories; (5) at Ahn's deposition, plaintiff learned that Ahn was employed by defendant Belafsky at the time of plaintiff's paralyzing injury; (6) on April 12, 1996, plaintiff served *Ahn* with the section 998 offer to compromise, and at that time, Belafsky had not yet been made a defendant in the case; (7) on April 17, 1996, Belafsky was added to the case as a Doe defendant; (8) Ahn himself had a liability policy from Norcal Mutual Insurance Company for $1 million that would apply to plaintiffs' malpractice claims; and (9) Belafsky was insured by Norcal Mutual Insurance Company against his own liability for Ahn's professional negligence, however, Ahn was not insured under Belafsky's Norcal policy. These facts do not support a theory that plaintiffs sought to settle the whole case with their

---

[15]We find such arguments doubtful in any event, given the court's observation in *Stallman v. Bell* (1991) 235 Cal.App.3d 740, 746 [286 Cal.Rptr. 755], that "recent cases have declined to mechanically apply a rule that renders void any joint offers without first examining whether it can be determined that the party . . . has in fact obtained a more favorable judgment."

offer to compromise, certainly not when they had just learned of another potentially liable person to be added as a defendant (i.e., the defendant Belafsky). The offer states plaintiffs were willing to settle *with Ahn* for the greater of $1 million or the combined coverage of *Ahn's* policies.

▓▓▓ Nor are we troubled by the provision in the offer to compromise that would allow plaintiffs, at their option, to vacate their offer, or a resulting section 998-based judgment. The provision simply sought to hold Ahn to his discovery representation that he only had $1 million in insurance coverage for plaintiffs' claims. Certainly litigants have a right to condition an offer to compromise on the accuracy of the information supplied by the offeree in discovery.

Next, Ahn argues that plaintiffs' offer was premature. He contends that the case was complex, Belafsky had not yet been named as a Doe defendant when the offer was made, only two depositions had been taken, "the parties did not have sufficient opportunity to determine their potential liability," and thus there was no reasonable expectation that the offer to compromise would be accepted. We do not agree.

Ahn was plaintiff's neurologist at St. Joseph Medical Center. He cites no evidence that he did not have access to plaintiff's hospital records after he was served, and did not know the extent and value of plaintiff's injuries at the time plaintiffs made their offer to compromise. His acceptance or rejection of the offer was not due until a full five months after he answered the complaint. Moreover, he was given the section 364 notice of plaintiff's intention to file this suit.[16] Given the horrific extent of plaintiff's injuries, Ahn certainly had enough time to determine whether it would be worth his while to let plaintiff have his policy limits rather than gamble with his chances at trial. That Belafsky was later brought into the case is not relevant; certainly, we are not informed how *Ahn's* liability could be impacted by Belafsky's status as a party to the case.

▓▓▓ Ahn's next assertion is that plaintiff should not receive prejudgment interest because (1) plaintiff rejected a $2 million settlement offer made by Ahn and Belafsky after we issued our opinion in the previous appeal, and (2) that rejection was made even though plaintiff was previously willing to settle for only $1 million. We do not find that a subsequent offer by defendants is relevant. What *is* relevant is that plaintiffs were willing to let Ahn out of the case for his policy limit but Ahn rejected the offer and was later found liable

---

[16]Section 364 states in part: "No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action."

for many times plaintiff's offer. Ahn's reliance on *Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382 [85 Cal.Rptr.2d 4] is misplaced. There, the plaintiff's section 998 offer to compromise for $150,000 was rejected. Some 15 months later, the plaintiff made a second offer to compromise, this time for $249,000, which also was rejected. Judgment was entered on a jury verdict in the amount of $175,000. The court determined the second offer to compromise was the operative one and denied plaintiff's request for prejudgment interest. Here, plaintiff's second offer to compromise was smaller than his first, and defendants' offer to compromise was not larger than the jury's award.

 Nor do we agree with Ahn's contention that plaintiff's offer to compromise was vague as to the amount plaintiff requested. The amount was clear—the greater of $1 million or the combined limits of *Ahn's* policies that would provide Ahn with coverage for plaintiff's claims. It was a basic policy limit offer. Moreover, the actual total of such insurance coverage, if it differed from the stated $1 million figure, was a fact peculiarly within Ahn's knowledge.

We likewise reject the notion that the offer did not conform to the requirements of section 667.7 because it did not offer Ahn "the option of periodizing the judgment prior to its entry." Periodic payments of future damages under section 667.7 are obtained when the party desiring them makes a request of the trial court. Plaintiff's offer to compromise did not preclude such a request by Ahn.

We reject Ahn's contention that during the period of the parties' posttrial motions that form the basis of their respective appeals, plaintiff argued that the judgment as a whole, including the prejudgment interest, should be awarded against both Ahn and Belafsky, and this shows that plaintiffs' offer to compromise was invalid. Ahn cites no record references to support his assertion of what plaintiff argued. Moreover, even if such an argument were made by plaintiff, it would not *retroactively* invalidate his offer to compromise, which was clearly directed solely to Ahn.

 Nor do we find merit in Ahn's contention that plaintiff's judgment on the special verdict was not more favorable to plaintiff than his section 998 offer to compromise. Ahn contends that *plaintiff's wife's* dismissal of her suit prevented her from obtaining a more favorable judgment from Ahn than what she offered to settle with him for, and therefore, *plaintiff* is precluded from receiving prejudgment interest because "the *joint* offer to compromise was not exceeded by the judgment." (Italics added.) This argument fails because the *judgment against Ahn* does not belong to plaintiff's wife, it

belongs to plaintiff. Therefore, the fact that the wife dismissed her suit without a recovery against Ahn is simply not relevant. The question is still whether plaintiff obtained a judgment against Ahn that is more favorable to plaintiff than his offer to Ahn for compromise.

Clearly plaintiff did obtain such a judgment. The present cash value of plaintiff's future damages (expenses and lost wages, totaling $3,846,175),[17] taken together with plaintiff's past damages (past expenses and lost wages, totaling $1,122,000), totals $4,968,175. When that figure is offset by the $1.5 million settlement obtained from St. Joseph Medical Center, the present cash value of the judgment awarded is reduced to $3,468,175. Given that the section 998 offer to compromise included the wife's offer to compromise, it is clear that plaintiff's portion of the offer was *something* less than $1 million, a figure far less than $3,468,175.

Citing no authority whatsoever, Ahn argues that it is the cost of an annuity to fund the judgment that must be used to determine whether plaintiff obtained a more favorable judgment than his section 998 offer. Ahn asserts the trial court erred when it used the jury's determination of the present value of the periodic payments to determine whether a more favorable judgment was obtained. "Although the cost of an annuity provides one measure of the present value of periodic payments, it is not the only measure." (*Hrimnak v. Watkins* (1995) 38 Cal.App.4th 964, 979 [45 Cal.Rptr.2d 514].)

b. *The Trial Court's Calculation of the Prejudgment Interest Properly Gave Consideration to the Impact of the St. Joseph Medical Center Settlement*

When the trial court calculated the prejudgment interest, it split its calculations into two steps. The purpose of having two calculations was to allow for the fact that plaintiffs' settlement with St. Joseph Medical Center occurred during the period between their offer to compromise with Ahn and the entry of the judgment.

Following the mandate of Civil Code section 3291, the court began its calculation of 10 percent interest by using the date of plaintiffs' offer, April 12, 1996, as a starting date. The amount of money to which this rate of

---

[17]When determining whether to award prejudgment interest, the trier of fact's award of future economic damages is reduced to its present value for the purpose of the computation that determines if the verdict award is more favorable to the plaintiff than the plaintiff's section 998 offer to compromise. (*Holt v. Regents of University of California, supra,* 73 Cal.App.4th at p. 878; *Atkins v. Strayhorn* (1990) 223 Cal.App.3d 1380, 1398-1399 [273 Cal.Rptr. 231].)

interest was applied was $4,968,175, which is the sum of the jury's calculations of (1) plaintiff's past medical expenses and lost wages, and (2) the *present value* of his future medical expenses and lost wages. This interest was calculated to the date of the payment of the St. Joseph Medical Center settlement (June 20, 1997) and amounted to $590,736.48.

Next, the court calculated interest from June 21, 1997, the day after the settlement with St. Joseph Medical Center, until October 18, 2000, the date of the judgment entered on the jury's verdict. The amount of money to which the statutory rate of interest was applied differed from the court's first calculation. This time, the court applied the rate of interest to $3,468,175, which is the original amount of the jury's discounted compensatory damage award ($4,968,175), *less the $1.5 million settlement.* This produced interest in the amount of $1,154,474.69. Together, the two amounts of prejudgment interest totaled $1,745,211.17. That was the amount awarded.

On appeal, Ahn contends the court erred in its prejudgment interest calculation because it used the jury's *verdict* in step one as the principal to which the interest rate was applied, and then used the *judgment* (i.e., the verdict less the settlement), in step two as the principal to which it applied the interest rate. Ahn asserts this method is invalid because Civil Code section 3291 specifically states that "the *judgment* shall bear interest at the legal rate of 10 percent per annum" (italics added), and a *judgment* is rendered after the trial court offsets a jury's award by the amount of a settlement.

Ahn relies on section 577, which states that a judgment is "the final determination of the rights of the parties in an action or proceeding." He also cites *Hrimnak v. Watkins, supra*, 38 Cal.App.4th at page 981, where the court stated that "Civil Code section 3291 does not authorize interest on the verdict but only on the judgment." However, *Hrimnak* is distinguishable on its facts. *Hrimnak* addressed the need to reduce a jury's verdict because of Civil Code section 3333.2's statutory cap on noneconomic damages. The jury had awarded the plaintiff $572,000 in noneconomic damages, and the statutory cap for such damages is $250,000. The reduction came in the context of determining whether the judgment was greater than a section 998 offer to compromise.

The *Hrimnak* court's literal reading of the word "judgment" in Civil Code section 3291 made sense in that case given the *statutory requirement* that the verdict be reduced. The issue before us is different. Here it does not make sense to *literally* apply Civil Code section 3291. Rather, it was proper for the trial court to engage in its two-step process in determining prejudgment

interest. Splitting the calculation *furthered* the purpose of Civil Code section 3291 to compensate plaintiff for the loss of use, *during the prejudgment period,* of the damages to which he was entitled due to Ahn's having negligently treated him. The trial court recognized that during the period of time between plaintiff's injury and the date of the judgment against Ahn, plaintiff was deprived of more compensatory damages prior to the settlement with St. Joseph Medical Center than he was after that settlement. After the settlement, he was deprived of $1.5 million less in damages than he was prior to the settlement. Therefore, the Civil Code section 3291 interest penalty was reasonably less after the settlement than before.

In *Newby v. Vroman* (1992) 11 Cal.App.4th 283 [14 Cal.Rptr.2d 44], the court utilized the same formula as used here. The *Newby* court applied that formula when it calculated the amount of interest due a plaintiff under Civil Code section 3288, which states: "In an action for the breach of an obligation not arising from contract, . . . interest may be given, in the discretion of the jury." The court rejected the notion that interest should be calculated only on the amount of a jury's award that remains after the amounts paid by settling tortfeasors are deducted from such award. The court reasoned that awarding interest in that manner would mean that a plaintiff would not be fully compensated for his loss, and plaintiffs would be less likely to settle. We find that the *Newby* reasoning is applicable to interest awarded under Civil Code section 3291, especially in light of the Supreme Court's observation that a purpose of "prejudgment interest *in general,* is to provide just compensation to the injured party for loss of use of the award during the prejudgment period." (*Lakin v. Watkins Associated Industries, supra,* 6 Cal.4th at p. 663, italics added.) The fact that *Newby* involved prejudgment interest under Civil Code section 3288 rather than Civil Code section 3291 is not relevant.

We do, however, agree that the judgment should not have included an award of Civil Code section 3287 prejudgment interest on the section 3291 prejudgment interest. (See fn. 11, *ante.*)[18, 19] Since a purpose of prejudgment interest is "to make the plaintiff whole as of the date of the injury" (*Lakin v.*

---

[18]Civil Code section 3287 permits prejudgment interest when the plaintiff "is entitled to recover damages certain, or capable of being made certain by calculation" and the right to recover such damages "is vested in him upon a particular day."

[19]This issue was raised first by the amici curiae. Plaintiff had the opportunity to respond to it in his reply/response to cross-appeal brief. The issue involves a question of law on undisputed facts, and we will consider it. (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1341, fn. 6 [67 Cal.Rptr.2d 726].) While this issue is not one of the several specific issues listed in defendants' notice of cross-appeal, the notice of cross-appeal does also state that defendants appeal from the "Amended Judgment entered Nunc Pro Tunc on January 4, 2001," which is the more traditional, general way of noticing an appeal from a judgment.

*Watkins Associated Industries, supra,* 6 Cal.4th at p. 663), a plaintiff does not need both Civil Code section 3291 prejudgment interest and Civil Code section 3287 prejudgment interest to accomplish that purpose. Moreover, this is not a case to which Civil Code section 3287 even applies. Plaintiff's claim was never based on a claim for payment of a "sum certain."

c. *Defendants Have Not Demonstrated Error in the Determination of the Periodic Payments*

Both plaintiff and defendants requested section 667.7 periodic payments of the future expenses and lost wages awarded by the jury to plaintiff. The amended judgment provided for payments for expenses in the years 2001-2028 (which is plaintiff's projected life expectancy), and payments for lost wages in the years 2001-2021 (up through what would have been his projected retirement age had he not been injured).

Defendants challenge the fact that the trial court ordered *equal* periodic payments, both for the years in which plaintiff will receive compensation for future expenses and future wages, and also for the later years, when he will receive only compensation for future expenses. Defendants assert the payments should be larger as the years progress because one of plaintiff's witnesses testified that inflation would play a part in determining plaintiff's future economic needs.

Actually, defendants make many references in their brief to multiple unnamed witnesses, but they confine actual record citations to the testimony of the person whom they assert supports their position regarding the effect of future inflation on plaintiff's economic needs and lost wages—an economist whom plaintiff called to testify on his behalf. Defendants also cite to schedules filled with rows and columns of numbers, and to their own proposed plans for periodic payments. Defendants' explanation of these items is that they proportionately matched some "life care plan" presented by plaintiff to the jury. Defendants assert the trial court should have adopted one of the periodic payments plans that they provided to the court. They contend the trial court's equal payment plan "deprived [them] of the time value of money [by] captur[ing] all of the inflationary impact and spread-[ing] it equally over all years." In other words, they argue, this disproportionately assigned inflated dollars to the early years of plaintiff's periodic award. They assert that "[t]his was contrary to what the jury assumed," although they do not explain how they know what the jury assumed. They argue that plaintiff will be overcompensated in the early years and under compensated in later years.

We apply an abuse of discretion standard to our review of the trial court's plan for periodic payments of future economic damages. (*Salgado v.*

*County of Los Angeles* (1998) 19 Cal.4th 629, 650 [80 Cal.Rptr.2d 46, 967 P.2d 585].) ▮ Here, defendants have not *demonstrated* abuse of discretion. ▮ Judgments are presumed to be correct, and reversible error must be affirmatively shown by persons challenging them. (*Walling v. Kimball* (1941) 17 Cal.2d 364, 373 [110 P.2d 58].)

▮ "In structuring a periodic-payment schedule under section 667.7, a trial court is 'guided by the evidence of future damages' introduced at trial. [Citations.]" (*Hrimnak v. Watkins, supra,* 38 Cal.App.4th at p. 975.) The trial court's December 18, 2000, minute order states that the court considered the evidence relating to plaintiff's future medical needs and future loss of earnings when it made its periodic payment plan. The court noted "that the jury rejected a considerable portion of Plaintiff's claimed future medical expenses,"[20] and the court stated that when it considered the life care plan offered by plaintiff's expert and the testimony of all of the parties' medical experts, it found it appropriate to order equal payments for plaintiff's future medical expenses.

At the hearing on the motions for section 667.7 payments, the trial court addressed defendants' concerns that the court was planning on ordering equal payments for plaintiff's future expenses. As it did in its minute order, the court observed that the jurors had rejected "significant portions of the future medical expenses that were claimed by the plaintiff," but the court said it "[didn't] know what portion that was. It could have been the escalations that were factored into it and the interest assumptions. It could have been the future medical expenses." The court stated its belief that making equal payments "was probably the safest way to ensure that if there are early surgeries at several hundred thousand dollars, [plaintiff] has enough money; and in the event there are expenses at the other end, he will still have enough money."

In addressing the issue of the equality of the payments for plaintiff's future lost wages, the court stated its belief that there was no conflict in the testimony of the parties' respective economists about those damages, and while perhaps the court could refigure the periodic payments to include an inflation factor, "it is a relatively nominal amount to make a big issue out of." The court observed it would be a difference over the 20 years of future lost wages payments of plus or minus $50 to $100.[21]

We have been presented with nothing that compels us to send this case back for a recomputation of the periodic payments. The trial court's reasoning for both the future expenses and the future lost wages is reasonable.

---

[20] Plaintiff had sought $15 million in damages based largely on the testimony presented, concerning anticipated costs and inflation.

[21] Although amici curiae argue the periodic payments for lost wages should have been spread out over 28 years (plaintiff's life expectancy) rather than 20 years (the number of

Fashioning periodic payments is not an exact science. In *Holt v. Regents of University of California, supra,* 73 Cal.App.4th at page 883, the court rejected equal periodic payments because there was evidence that the plaintiff's needs would be greater as time wore on. The *Holt* court observed that in *Salgado v. County of Los Angeles, supra,* 19 Cal.4th 629, the Supreme Court determined equal payments were not an abuse of discretion because although the real value of equal payments would decrease as time wore on, the plaintiff's losses would also decrease. The *Salgado* court stated that therefore, the periodic payment schedule did not fail to "minimally satisfy" section 667.7's fundamental goal "of matching losses with compensation as the losses occur." (*Salgado,* at p. 650.)

### DISPOSITION

Page four of the amended judgment is amended to remove its provision for applying Civil Code section 3287 interest to the prejudgment interest authorized by Civil Code section 3291. As so amended, the amended judgment is affirmed. All parties shall bear their own costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied September 30, 2002, and the opinion was modified to read as printed above. The petition of appellant Joe Deocampo for review by the Supreme Court was denied December 11, 2002. Chin, J., did not participate therein.

---

additional years he would have worked prior to retirement had he not been injured), defendants have not made such an argument.