Filed 2/1/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JUAN GONZALEZ et al., | B271312 |
| Plaintiffs and Respondents, | Los Angeles County |
| v. | Super. Ct. No. KC064256 |
| WAYNE BILL LEW et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, John J. Kralik, Judge. Affirmed.

Grant, Genovese & Baratta, Lance D. Orloff and Jeffrey P. Magwood for Defendants and Appellants.

Viefhaus & Schneider and Calvin C. Schneider for Plaintiffs and Respondents.

# INTRODUCTION

Code of Civil Procedure section 998[1] is a cost-shifting statute designed to encourage parties to settle their lawsuits prior to trial by punishing a party that refuses a reasonable settlement offer. In order to trigger section 998, a settlement offer must be clear, in that it must allow the party receiving the offer to evaluate whether the party making the offer is likely to obtain a more favorable verdict at trial.

In this wrongful death case, two people (Virginia Gonzalez and Maverick Crowder) died after a fire engulfed the rented home in which they were living. Both sets of the decedents' heirs (plaintiffs) sued the owners of the rented home, Wayne and Maria Lew, and plaintiffs subsequently made a joint offer to settle both claims for $1.5 million. The Lews rejected the offer and plaintiffs prevailed at trial; the jury awarded Virginia's heirs more than $2.2 million and Maverick's heirs just over $357,000. The Lews appeal the court's order awarding costs to plaintiffs under section 998, arguing the joint offer to settle both wrongful death claims was invalid because it did not allow them to evaluate each claim independently. Under the unique circumstances of this case, we conclude the joint offer was valid and affirm the court's order.

# FACTS AND PROCEDURAL BACKGROUND

Two people died in a residential home fire: Virginia Gonzalez (age 49) and Maverick Crowder (age 3). Virgina and her

---

[1]     All undesignated statutory references are to the Code of Civil Procedure.

husband, Juan,[2] rented the home from the Lews. The precise cause of the fire was never determined.

At the time of the fire, Virginia lived in the home with Juan and the couple's minor daughter Jasmine.  Virginia and Juan had three other children: Yvette, Richard, and Priscilla. Maverick (Juan's son, born to Kathleen Crowder) also lived in the home with the Gonzalez family. Apparently, "[a]lthough Maverick … was treated as a member of [the] Gonzalez family by Juan and Virginia and their children, the children learned after the fire what Virginia and Juan had decided (in the best interest of the family) not to tell them previously: that Maverick … was in fact the child of Juan Gonzalez and Kathleen Crowder."

Virginia's heirs (Juan and the four children) and Maverick's heirs (Juan and Kathleen Crowder) sued the Lews[3] alleging the wrongful death of their respective decedents. The plaintiffs later served the Lews with a written offer to settle both wrongful death claims in the amount of $1.5 million. The Lews did not accept the offer but later made their own offer, addressed to all plaintiffs jointly, to settle both wrongful death claims in the amount of $1 million.  Plaintiffs did not accept the offer.

The matter proceeded to trial before a jury. With respect to Virgina, the jury's verdict awarded $2,254,300 to Juan, Priscilla, Richard, Yvette, and Jasmine. The jury also awarded Juan and Kathleen Crowder $357,100 for the death of Maverick.  The jury

---

[2]     Because all the members of the Gonzalez family have the same last name, we use their first names when we refer to them individually.

[3]     Plaintiffs also sued the Lews in their capacity as trustees of the Lew Family Trust. For convenience, we refer to all of the defendants collectively as the Lews.

attributed 15 percent of the fault to Juan, leaving the Lews responsible for the remaining 85 percent.  In subsequent proceedings, the court allocated the damages among the decedents' heirs. The court also reduced Juan's economic damages by 15 percent under Proposition 51.

Following trial, plaintiffs jointly submitted a memorandum of costs seeking, among other things, expert witness fees ($76,931.50) and interest on the judgment beginning the date the settlement offer expired ($347,595.14), both as a consequence of the Lews' failure to accept their section 998 settlement offer. The Lews filed a motion to tax plaintiffs' costs, arguing the settlement offer was not a valid offer under section 998 because the offer concerned two independent wrongful death claims.

As to that issue, the court denied the Lews' motion.[4] After examining the text of section 998, the court concluded the statute "does not require the separation of claims or plaintiffs. Neither does it invalidate joint offers." Citing the overall goal of section 998—encouraging settlement—the court further stated that "joint offers should be encouraged rather than discouraged. … Where the parties are in fact attempting to settle on a joint basis, their efforts should not be impeded by judge made rules requiring the separation of parties or claims." The court then found plaintiffs' settlement offer was valid under section 998. The Lews timely appeal.

---

[4]     The motion to tax plaintiffs' costs contained several independent arguments. The court granted the motion in part and denied the motion in part.

4

# DISCUSSION

The Lews assert the court erred in awarding plaintiffs expert witness fees and post-settlement-offer interest on the judgment. According to the Lews, plaintiffs' global settlement offer was invalid under section 998 because it offered to settle both wrongful death actions and did not allocate the settlement between the two sets of decedents' heirs. On the facts of this case, we conclude the court did not err.

## 1. Standard of Review

The application of section 998 to undisputed facts is a legal issue we review de novo. (See *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1018 (*Martinez*).)

## 2. The overriding purpose of section 998 is to encourage pretrial settlement of litigation.

Generally, a prevailing party in a civil case "is entitled as a matter of right to recover costs." (§ 1032, subd. (b).) Recoverable costs do not typically include the fees of expert witnesses not ordered by the court. (§§ 1032, 1033.5, subd. (b)(1).) But expert witness fees are recoverable in some circumstances, as when a more favorable judgment for the plaintiff follows a defendant's rejection of a valid pretrial section 998 settlement offer. (See *Martinez, supra*, 56 Cal.4th at pp. 1019 & 1022, fn. 4; *Kahn v. The Dewey Group* (2015) 240 Cal.App.4th 227, 237 (*Kahn*).) Section 998 establishes a procedure for shifting costs upon a party's refusal to settle by "expand[ing] the number and type of recoverable costs and fees over and above those permitted by section 1032(b)." (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 1000.) In addition to expert witness fees, a

5

prevailing plaintiff in a personal injury case may obtain post-offer interest on the judgment. (Civ. Code, § 3291.)

As relevant here, section 998 provides: "(a) The costs allowed under Sections 1031 and 1032 shall be withheld or augmented as provided in this section. [¶] .... [¶] (d) If an offer made by a plaintiff is not accepted and the defendant fails to obtain a more favorable judgment or award in any action or proceeding ..., the court or arbitrator, in its discretion, may require the defendant to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the plaintiff, in addition to plaintiff's costs." "To qualify for these augmented costs, the plaintiff's offer must be in writing and conform to statutory content requirements. (§ 998, subd. (b).)" (*Martinez, supra*, 56 Cal.4th at p. 1019.)

Section 998 is intended to encourage the settlement of lawsuits prior to trial by penalizing a party who fails to accept a reasonable settlement offer. (*T.M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 280.) "To effectuate this policy, section 998 provides 'a strong financial disincentive to a party—whether it be a plaintiff or a defendant—who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer.' [Citation.] At the same time, the potential for statutory recovery of expert witness fees and other costs provides parties 'a financial incentive to make reasonable settlement offers.' [Citation.] Section 998 aims to avoid the time delays and economic waste associated with trials and to reduce

the number of meritless lawsuits. [Citations.]" (*Martinez, supra*, 56 Cal.4th at p. 1019.)

**3.** **Joint settlement offers are not always valid under section 998.**

On its face, section 998 applies to offers made by "*a plaintiff*" or "*a defendant*." Nonetheless, our courts have applied section 998 where an offer is jointly made by or offered to more than one party. But where a settlement offer involves multiple parties on one side, it will not always trigger section 998.

**3.1.** **Unallocated joint settlement offers made to multiple parties.**

California courts uniformly recognize as invalid an unallocated offer from a defendant to multiple plaintiffs with separate claims where the offer is conditioned on acceptance by all.

In *Meissner v. Paulson* (1989) 212 Cal.App.3d 785 (*Meissner*), for example, the plaintiffs (a landlord and his insurer) sued the defendant[5] (a tenant) after a fire occurred on the leased premises. The landlord sought to recover unpaid rent, attorney's fees, and the cost of repairing the premises under both a breach of contract and a tort theory. (*Id.* at p. 791.) The insurer asserted a subrogation claim for the cost to repair the leased premises. (*Ibid*.) The defendant offered to settle the entire case in the amount of $25,001 but plaintiffs rejected the offer. Before trial, the parties stipulated the defendant owed the landlord $5,855.87 in unpaid rent; a jury later found the defendant was not

---

[5] The tenant's insurer joined the action during the litigation, after the tenant died.

7

negligent and the insurer recovered nothing. (*Id*. at p. 789.) In light of the defendant's settlement offer, the trial court awarded the defendant additional costs under section 998. (*Id*. at p. 790.)

The Court of Appeal reversed the cost award. The court briefly discussed two prior cases which held an unallocated offer to multiple plaintiffs invalid under section 998 because it was impossible to tell, after trial, whether any of the plaintiffs received a better result after the trial. (*Meissner, supra,* 212 Cal.App.3d at p. 790.) In one case, *Randles v. Lowry* (1970) 4 Cal.App.3d 68 (*Randles*), a defendant made a joint offer to settle a tort action with three plaintiffs, two of whom eventually recovered at trial and sought to recover costs under section 998. (*Meissner*, at p. 790.) But because the settlement offer was not allocated among the three plaintiffs, it was impossible to tell whether the two prevailing plaintiffs obtained more favorable results at trial. (*Ibid*.) That court held the settlement offer invalid under section 998 because it recognized that, as a practical matter, a party receiving a joint unallocated offer may not be able to prove, as section 998 requires, that he or she obtained a more favorable result at trial—and therefore should not be subject to its cost-shifting provision.

But in *Meissner*, the court did not rest its decision on that point.  There, the defendant had no difficulty establishing that the landlord's insurer, having received nothing at trial, plainly would have fared better under the settlement offer, even after subtracting the landlord's recovery of unpaid rent. Instead, the court focused on the fact that the defendant's offer, to be accepted, required both plaintiffs to consent to settlement and determine between themselves the apportionment of the settlement. (*Meissner, supra,* 212 Cal.App.3d at pp. 790–791.)

The court noted, as a matter of policy, that applying section 998 to the unallocated joint offer in the case before it "would introduce great uncertainty into this area of the law. Plaintiffs would be required to second-guess all joint offers to determine whether a failure to reach agreement with coplaintiffs would cause a risk of section 998 costs against them. We believe the Legislature did not intend to place this burden on offerees. To enforce the purpose of section 998, we find as a matter of law only an offer made to a single plaintiff, without need for allocation or acceptance by other plaintiffs, qualifies as a valid offer under section 998." (*Ibid*.)

Courts have applied the same reasoning where a plaintiff makes an unallocated settlement offer to multiple defendants with potentially varying liability. In *Taing v. Johnson Scaffolding Co.* (1992) 9 Cal.App.4th 579 (*Taing*), for instance, the plaintiff was injured when he fell from a scaffold while working for a subcontractor at a construction site. (*Id*. at p. 582.) The plaintiff later sued the general contractor, the scaffolding company, and the owner of the site (collectively, the defendants) and then offered to settle the case against all three defendants for $249,999. The defendants did not accept the offer. A jury later found the scaffolding contractor negligent and 100 percent responsible for the plaintiff's injuries and awarded the plaintiff $492,626. The court awarded the plaintiff his expert witness fees under section 998 and prejudgment interest under Civil Code section 3291.

The Court of Appeal reversed the cost and interest award. On appeal, the scaffolding contractor argued "the joint offer unfairly burdened [the] defendants by requiring them each to second-guess whether failure to reach an agreement to settle

with the other defendants would risk imposition of section 998 penalties." (*Taing, supra*, 9 Cal.App.4th at p. 583.) The court agreed, noting with reference to *Meissner* that "an unapportioned offer by a single plaintiff to multiple defendants … requires any defendant who wants to accept to obtain the concurrence of his or her codefendants. This places a reasonable defendant at the mercy of codefendants whose refusal to settle may be unreasonable." (*Ibid.*) The court therefore held the plaintiff's offer invalid under section 998 because it was not "sufficiently specific to permit the individual defendant to evaluate it and make a reasoned decision whether to accept without the additional burden of obtaining the acceptance of codefendants … ." (*Id.* at p. 585.)

As the cases just discussed illustrate, settlement offers made to multiple parties present special challenges where section 998 is concerned. Nevertheless, our courts have noted some situations in which an unallocated offer made to multiple parties is valid under section 998.

For example, where several plaintiffs receiving a settlement offer have a unity of interest in the subject of the litigation, an unallocated joint settlement offer to them may be valid under section 998. At least one court has held that spouses who suffer an injury to community property have a unity of interest, i.e., a single, indivisible injury. (See, e.g., *Vick v. DaCorsi* (2003) 110 Cal.App.4th 206, 210–211.) Thus, where a husband and wife brought an action for fraud and breach of contract in connection with the purchase of a family home, an unallocated settlement offer to them was held to be valid. (*Ibid.*) In that instance, the rationales for not applying section 998—the inability of one party to settle without the consent of the other

parties, and the potential difficulty of ascertaining whether the party seeking costs obtains a more favorable verdict—are not present. Where community property interests are concerned, for example, either spouse may act unilaterally on behalf of the community to accept or reject a settlement offer and whatever cost-shifting effect section 998 might have, it will affect the community as a whole. The community also suffers a single injury and obtains a single damages award, making it possible to determine with certainty whether a more favorable verdict results.

Additionally, several courts have held that in a wrongful death case, a decedent's heirs have a unity of interest such that a settlement offer made jointly to all the heirs is valid under section 998.[6] In *McDaniel v. Asuncion* (2013) 214 Cal.App.4th 1201 (*McDaniel*), the court observed that a wrongful death cause of action is atypical, in that a decedent's heirs may only bring a single, indivisible action for wrongful death. All heirs must join together in a single action and the jury will award a single lump sum for all recoverable damages. (*Id.* at p. 1206.) The recovery of the individual heirs is determined later by the court based upon the proportion each heir's personal damage bears to the damage suffered by the others. (*Ibid.*) In light of these facts, the Court of

---

[6] The courts of appeal are currently divided on this question. (See, e.g., *Gilman v.Beverly California Corp.* (1991) 231 Cal.App.3d 121, 124–126 (*Gilman*) [rejecting joint offer theory because "each heir should be regarded as having a personal and separate cause of action;" lump sum award is merely a procedural element in wrongful death cases].) But the issue in this case is not whether an unallocated offer *to* a decedent's heirs is valid. Rather, we consider whether an unallocated global settlement offer *from* multiple plaintiffs (who, in this case, are heirs of two decedents) is valid under section 998.

Appeal determined that an unallocated joint settlement offer to a decedent's heirs is valid under section 998. (*Id*. at p. 1208.) The court noted that since the jury renders a single lump sum verdict, it is simple to compare the joint offer to the verdict in order to determine whether a more favorable result was obtained at trial. (*Id*. at pp. 1207–1208.)

### 3.2. Unallocated joint settlement offers made by multiple parties.

To some extent, our courts have applied the rationale of the cases just discussed to circumstances in which an unallocated joint settlement offer is made *by* multiple parties. The Lews rely on two such cases, *Gilman* and *Hurlbut v. Sonora Community Hospital* (1989) 207 Cal.App.3d 388 (*Hurlbut*). But as we explain, that approach does not always make sense and, perhaps for that reason, our courts have not taken a uniform approach to cases in this area. (See *McDaniel, supra*, 214 Cal.App.4th at p. 1207 [recognizing divergent approaches].)

The Lews first cite to *Hurlbut,* a personal injury case arising out of injuries sustained by an infant during birth. There, the child and both parents sued the hospital where the birth took place. The parents sought emotional distress damages and the child sought damages relating to her physical injuries. (*Hurlbut, supra*, 207 Cal.App.3d at p. 393.) Prior to trial, the three plaintiffs made a joint, unallocated settlement offer to the hospital proposing two alternatives: a cash payment of $499,000 plus monthly payments in the amount of $17,000 for the life of the child, increasing at a rate of 4 percent per year, or a single lump sum payment in the amount of $1,900,000. (*Id*. at p. 407.) The jury awarded damages as follows: $11,500 per month plus $250,000 noneconomic damages to the child, $250,000

12

noneconomic damages to each of the parents, $350,000 to the mother representing lost earning capacity, and $14,603 reimbursement for care already provided to the child. (*Id.* at p. 393.) The trial court granted plaintiffs' request for expert witness fees based on the settlement offer. (*Id.* at p. 394.)

The Court of Appeal reversed the award, noting that section 998 makes no mention of structured settlements and plaintiffs introduced no evidence concerning the present value of either their proposed settlement or the jury's award. (*Hurlbut, supra,* 207 Cal.App.3d at pp. 408–409, 411.) Plaintiffs therefore failed to establish, as section 998 requires, they obtained a more favorable verdict: "Having failed to present evidence sufficient to establish the present value of the structured settlement offer, plaintiffs may not take advantage of the benefits offered under … section 998." (*Id.* at p. 409.) The court concluded, "[a]bsent such findings, it is impossible to determine whether plaintiffs achieved a more favorable judgment at trial, making the … section 998 offer unenforceable." (*Id.* at pp. 408–409.)

*Hurlbut* offers little guidance to us here, as we are not concerned with a structured settlement nor any other problem of valuation concerning the plaintiffs' offer or the subsequent judgment. But the Lews rely on additional analysis by the court which is, arguably, dicta. After concluding the plaintiffs failed to establish the value of either their settlement offer or the jury's verdict, and therefore failed to establish they obtained a more favorable judgment, the court went on to state that the joint nature of the settlement offer "precludes a determination of whether *each* plaintiff received a judgment more favorable than the offer." (*Hurlbut, supra,* 207 Cal.App.3d at p. 409, original emphasis.) The court briefly discussed *Randles,* which, as already

13

noted, involved an unallocated offer from a defendant to three plaintiffs with severable causes of action. (*Ibid*.) At trial, the plaintiffs received damage awards totaling less than the settlement offer. Nevertheless, the court denied the defendant's request for costs because the unallocated offer made it impossible to determine whether any individual plaintiff received a less favorable result than he would have under the settlement offer. (*Ibid*.)

After noting *Randles* involved an offer *to* multiple plaintiffs, the court in *Hurlbut* stated the same principle should apply to an offer *from* multiple plaintiffs. (*Hurlbut, supra*, 207 Cal.App.3d at p. 409.) It therefore concluded the settlement offer in the case before it was invalid: "To consider plaintiffs' joint settlement offer as valid would deprive defendant of the opportunity to evaluate the likelihood of each party receiving a more favorable verdict at trial. Such an offer makes it impossible to make such a determination after verdict." (*Id*. at p. 410.)

Although *Hurlbut* is not controlling,[7] as the Lews assert, we pause to comment on its reasoning. It is not at all apparent, as *Hurlbut* suggests, that the principle stated in *Randles* and *Meissner* should apply with equal force in the converse circumstance. In *Randles* and *Meissner*, the defendant chose to lump the plaintiffs together and in so doing, not only melded their separate claims together, but also required all of them to agree to the proposed settlement terms. As the court noted in *Meissner*, if that sort of offer were valid under section 998, a

---

[7] There is no horizontal stare decisis in the California Court of Appeal. (See, e.g., *Jessen v. Mentor Corp.* (2008) 158 Cal.App.4th 1480, 1489, fn. 10.)

14

plaintiff could be liable for additional costs under section 998 through no fault of her own, as in the case where an offer is made to multiple plaintiffs and one plaintiff wants to settle but others do not. (*Meissner, supra*, 212 Cal.App.3d at p. 791.) No similar concern is present in the converse situation—where plaintiffs with separate claims choose to band together for the purpose of offering a global settlement to a single defendant. In that instance, the plaintiffs have presumably negotiated the allocation of any settlement to their satisfaction and they are in control of their exposure to liability under section 998. And the individual party receiving the offer does not have to obtain the consent of other parties—or risk exposure to additional costs under section 998. As a practical matter, it may not be possible for any of the plaintiffs to establish they obtained a more favorable verdict—as in the case where each plaintiff later receives an amount less than the settlement offer—but that will not always be the case and would not, in any event, justify a rule that joint offers from multiple parties are always invalid.

In the other case relied upon by the Lews, *Gilman*, the Court of Appeal followed *Hurlbut*. There, multiple heirs sued a skilled nursing facility following the decedent's death. (*Gilman, supra*, 231 Cal.App.3d at p. 123.) Collectively, the plaintiffs offered to settle the case for $250,000, then made a second offer to settle for $150,000. (*Id*. at p. 124.) The total judgment for plaintiffs was $228,379.79—more favorable than their second settlement offer. (*Id*. at p. 124 & fn. 4.) After taking the view that the heirs had individual, rather than indivisible, claims, the court referenced the rationale of *Hurlbut*: "the joint offer to compromise did not afford [the defendant] the opportunity to evaluate the separate and distinct loss suffered by each plaintiff as a result of

15

the death" of the decedent. (*Id.* at p. 126.) But ultimately the court concluded that, as a practical matter, "[w]ithout an apportionment of the damages among the four plaintiffs, it is impossible to say that any one of them received a judgment more favorable than she would have received under the [settlement] offer." (*Ibid.*)

Drawing on these cases, the Lews argue here that the plaintiffs' joint settlement offer was "void ab initio." But the idea that an offer jointly made is invalid from its inception, simply because it is jointly made, has been repeatedly rejected.

In *Stallman v. Bell* (1991) 235 Cal.App.3d 740 (*Stallman*), for example, plaintiffs' decedent died in a car accident. The decedent's widow sued the defendants for wrongful death and the decedent's estate sought damages for personal injury and property damage. (*Id.* at p. 743.) The defendants rejected a joint settlement offer from the widow and the estate in the amount of $225,000. (*Ibid.*) After obtaining a less favorable judgment at trial, defendants challenged the plaintiffs' request for costs based upon their section 998 settlement offer, arguing the "statutory offer was void from its inception because it was made jointly by both the [widow] and decedent's estate." (*Id.* at p. 745.) The court observed that although *Hurlbut* held a similar joint offer invalid, "[m]ore recent cases have declined to mechanically apply a rule that renders void any joint offers without first examining whether it can be determined that the party claiming costs has in fact obtained a more favorable judgment." (*Id.* at p. 746.) The court concluded that in the case before it, it was possible to determine with certainty that plaintiffs obtained a more favorable judgment (even though the amount of the offer and the amount of the judgment were very close) because the jury

16

rendered a single verdict for both plaintiffs. (*Id.* at p. 747.) Thus, the court could compare the joint unallocated offer to the single unallocated verdict and determine which side obtained the more favorable judgment.

The court applied similar reasoning in *Fortman v. Hemco, Inc.* (1989) 211 Cal.App.3d 241 (*Fortman*). There, a toddler suffered severe injuries after she fell out of a moving car. (*Id.* at p. 248.) The toddler filed a personal injury claim against the manufacturer of a custom part installed on the car; her mother, the driver of the car, sought emotional distress damages. The two plaintiffs offered to settle their claims for $1 million and the defendant rejected the offer. (*Id.* at pp. 246–247, 249.) The mother later dismissed her claim and the case proceeded to trial only on the toddler's claim. (*Id.* at p. 262.) The jury awarded the toddler more than $23 million in damages. (*Id.* at p. 250.)

Challenging the award of prejudgment interest to the toddler, which was based on the section 998 settlement offer, the defendant argued the plaintiffs' offer was invalid because it was jointly made. (*Fortman, supra*, 211 Cal.App.3d at p. 263.) Citing cases holding that an unallocated offer *to* multiple plaintiffs is invalid under section 998, the defendant argued, as was argued in *Hurlbut*, that because the joint offer *from* the two plaintiffs was unallocated, it was impossible to determine whether a more favorable verdict was obtained at trial. (*Ibid.*)

The court rejected that argument, however, noting that a mechanical application of a rule against joint settlement offers lacked common sense. Specifically, the court concluded "it is absolutely clear that [the toddler] received a greater amount in damages after trial than she would have received had [the defendant] accepted the joint offer even if the entire amount of

17

the offer, $1 million, is attributed to her. … [The toddler's] $23 million-plus award leaves no doubt in anyone's mind that her recovery far exceeded the statutory offer." (*Id*. at p. 263; see also *Deocampo v. Ahn* (2002) 101 Cal.App.4th 758, 776 [where husband sued for injury and wife sued for loss of consortium, joint settlement offer for $1 million valid where jury awarded husband $11 million; verdict exceeded offer to such an extent it was absolutely clear husband obtained more favorable judgment].)

In another case, *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613 (*Johnson*), the appellate court took a similar approach. Plaintiffs' decedent, a Marine Corps pilot, died in a helicopter crash. The surviving spouse and children of the decedent sued the manufacturer of the helicopter engine contending it used defective fuel nozzles in the engine. (*Id*. at p. 615.) The manufacturer rejected plaintiffs' $1 million unallocated joint settlement offer; the jury subsequently awarded the three plaintiffs $2.1 million in economic damages and awarded the decedent's spouse $1.3 million in noneconomic damages. (*Id*. at p. 628.) The trial court awarded plaintiffs additional costs, including expert witness fees, based on their section 998 offer. The defendant argued the joint offer was invalid because (as the Lews argue here) "it could not evaluate the joint offer with respect to each plaintiff at the time the offer was made and it is now impossible to tell what portion of the combined verdict the jury assigned to each plaintiff. … [I]t cannot be determined if the award was more favorable than the terms of the offer; and the court should have denied plaintiffs' motion for prejudgment interest and expert fees." (*Ibid*.)

Following the reasoning of *Stallman*, the appellate court affirmed the cost award. The court emphasized, as a matter of "common sense," that plaintiffs made a joint offer of $1 million and received verdicts of $2.1 million (for all three heirs) and $1.3 million (for the decedent's spouse). (*Johnson, supra*, 28 Cal.App.4th at p. 630.) "Compelling logic leads to the conclusion that these plaintiffs recovered more than the amount of their section 998 offer." (*Ibid*.)

These courts rejected the rule that an unallocated joint offer is always invalid, even though such an offer might theoretically render it impossible to determine later whether a party claiming costs obtained a more favorable verdict and is therefore entitled to costs under section 998. In *Fortman*, for example, the $1 million joint offer from the plaintiffs *could* have made it impossible for one of the plaintiffs to prove she obtained a more favorable verdict. Had the toddler received $800,000 at trial, for example, it would be impossible to know whether she fared better under the verdict or under the unallocated joint offer of $1 million. But where the verdict in favor of one plaintiff exceeds the offer that was jointly made, as was the case in *Fortman* where two plaintiffs offered to settle for $1 million and one plaintiff later received a $23 million verdict, that plaintiff can establish with certainty, as section 998 requires, that she obtained a more favorable verdict.

These decisions impliedly, though not explicitly, reject the argument (made by the Lews here) that an unallocated joint offer from multiple parties should always be invalid because it precludes the receiving party from evaluating the claims of the offering parties separately. And this notion, drawn from cases such as *Meissner* where the parties *receiving* an unallocated joint

19

offer must all agree to settle or risk exposure to additional costs under section 998, does not readily apply in reverse. As we have said, if an unallocated offer from one party to multiple opposing parties were valid, the party making the offer would effectively force the opposing parties to work together and would, where those parties cannot agree, subject even parties who wish to settle to the punitive effect of section 998. As our courts have observed, although the Legislature enacted section 998 to encourage settlement of litigation, it did not intend the cost-shifting provisions to apply to parties who wish to settle but cannot do so through no fault of their own. But where, as here, multiple parties choose to band together and offer a global settlement, that concern is simply not present.

At least one court has directly criticized the sort of argument advanced by the Lews in this case. In *Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141 (*Persson*), the plaintiff and defendant Nokes were founders and shareholders of Smart Inventions, Inc. (*Id.* at p. 1146.) The plaintiff sued Nokes and Smart Inventions (collectively, the defendants) for fraud and breach of fiduciary duty. (*Ibid.*) The defendants jointly offered to settle the case for $500,000; Persson refused and later obtained a judgment for $306,000 plus attorney's fees. (*Id.* at pp. 1146, 1169.) After trial, the defendants sought an award of attorney's fees based on their joint settlement offer. (*Id.* at p. 1169.) The trial court found the defendants' settlement offer invalid under section 998 because the offer was unallocated as between the defendants. The court noted that a joint offer from defendants may be valid under section 998 where the defendants are jointly and severally liable. (*Ibid.*) But in the case before it, the defendants' liability was not coextensive: the court had already

20

ruled, at the time of the offer, that Smart Inventions did not owe the plaintiff any fiduciary duty. (*Ibid*.) On that basis, the court denied the defendants' fee request, stating: "Because the section 998 offer 'was a joint and several offer for multiple defendants and did not separate out and distinguish between them and the separate causes of action applicable to each,' [the plaintiff] 'was not in a position to evaluate the offer.' " (*Ibid*.)

In reversing the order, the appellate court rejected the trial court's notion that the offer needed to separate the offers as between the defendants, observing that "[a] joint offer by two defendants that judgment in a stated amount may be taken against each one of them, jointly and severally, even though one defendant has no potential liability on one of plaintiff's claims, is not uncertain. The offer in no way prevents the plaintiff from assessing his chances of obtaining a better judgment against either defendant after trial. Moreover, such an offer does not present any difficulty in determining whether the subsequent judgment is more favorable than the offer. Consequently, no reason exists for its invalidation." (*Persson, supra*, 125 Cal.App.4th at p. 1170.) The court pointedly dismissed the plaintiff's argument that the joint offer placed him in an untenable position because it deprived him of the opportunity to assess the chance of prevailing against each defendant in an amount in excess of the offer: "It is incomprehensible why a plaintiff would be unable to evaluate an offer in which each defendant offers to have judgment taken against him, jointly and severally, in a stated amount … . The plaintiff need only assess the chances of recovery on each of his claims, no matter which defendant is liable, and add them together. If the joint offer exceeds that amount, the plaintiff should accept it." (*Ibid*.)

## 4.     The plaintiffs' joint settlement offer was not invalid.

Applying the rationale of *Fortman* and the other cases just discussed, we conclude the court properly awarded plaintiffs costs under section 998. Plaintiffs offered to settle both wrongful death claims for $1.5 million and collectively recovered more than $2.6 million. And Virginia's heirs plainly obtained a more favorable verdict at trial, inasmuch as the jury awarded them more than $2.2 million. Thus, the present case is similar to *Fortman,* where the mother and toddler asserted separate claims for emotional distress and personal injury, respectively, and the toddler later obtained a verdict of $23 million—an amount far in excess of the joint unallocated settlement offer of $1 million. Here, as there, even if the entire amount of the settlement offer is attributed to the wrongful death claim of Virginia's heirs, it is plain they obtained a more favorable result at trial.[8]

Relying on *Hurlbut* and *Gilman*, the Lews argue that plaintiffs' joint offer to settle both wrongful death actions was invalid "ab initio" because it "deprived [them] of the opportunity to evaluate the likelihood that a jury would award damages to Virginia Gonzalez's heirs in excess of the $1.5 million 998 offer, but award Maverick Crowder's heirs less than the 998 offer." As we have said, this argument has been rejected by a number of courts in circumstances where it is plain that one of the parties

---

[8]     It is not clear that Maverick's heirs fared better at trial. But it is significant that the focus of trial was on the cause of the fire that killed both plaintiffs' decedents, and all the plaintiffs were represented by the same counsel below, apparently proceeding as a unit. After trial, plaintiffs submitted a joint cost bill. The Lews have not requested any reduction in or allocation of the cost award, only that it be reversed in its entirety, and we therefore do not consider that issue.

22

offering joint settlement later obtains a verdict that exceeds the joint offer. Moreover, as the court pointed out in *Persson*, it is "incomprehensible" that the Lews could not evaluate the risk of refusing the settlement offer because it was not allocated between the two sets of heirs. The Lews could have evaluated their exposure on the wrongful death claims individually and then added the figures together. If they fared better under plaintiffs' offer, it would have been prudent to accept it. Plainly, the Lews did not anticipate that either wrongful death claim, standing alone, would exceed the settlement offer.  And this is precisely the situation in which an additional cost award under section 998 is appropriate and in furtherance of the goal of encouraging parties to accept reasonable settlement offers.  (See, e.g., *Hurlbut, supra*, 207 Cal.App.3d at p. 408 [" 'As a general rule, the reasonableness of a defendant's offer … represents a reasonable prediction of the amount of money, if any, defendant would have to pay plaintiff following a trial' "].)

The Lews also assert "[t]here was no single, indivisible injury to evaluate for settlement purposes." Although we agree plaintiffs did not suffer a single, indivisible injury because they are the heirs of two different and unrelated decedents, we conclude that fact does not preclude the application of section 998 here. In several of the cases discussed *ante*, the parties offering settlement had different claims stemming from different types of injuries: *Stallman* involved claims by both the estate and the wife of a decedent, *Fortman* involved a personal injury claim by a toddler and an emotional distress claim by the toddler's mother, and *Deocampo* involved a personal injury claim by a husband and loss of consortium by his wife. (*Stallman, supra*, 235 Cal.App.3d at p. 743; *Fortman, supra*, 211 Cal.App.3d at p. 249; *Deocampo,*

23

*supra*, 101 Cal.App.4th at p. 766.) In each of those cases, the courts awarded additional costs under section 998, notwithstanding the absence of a single, indivisible injury.

In evaluating the application of section 998 in various factual contexts, we are guided by the overarching policies in favor of encouraging reasonable settlements, compensating injured parties, and avoiding the injection of uncertainty into the 998 process—a result certain to encourage gamesmanship and other actions incompatible with the goal of resolving, rather than creating, legal disputes. (See *Martinez, supra*, 56 Cal.4th at pp. 1020–1021; *Kahn, supra*, 240 Cal.App.4th at pp. 242–244.) If plaintiffs with disparate claims want to make a global settlement offer which would put an end to the litigation at hand (and work out the details among themselves), they should be encouraged to do so.

## DISPOSITION

The order denying in part and granting in part the motion to tax costs is affirmed. Respondents to recover their costs on appeal.

## CERTIFIED FOR PUBLICATION

LAVIN, J.

WE CONCUR:

EDMON, P. J.

DHANIDINA, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.