Filed 8/19/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

RIVERSIDE MINING LIMITED,

     Plaintiff and Respondent,

v.

QUALITY AGGREGATES,

     Defendant and Appellant.

E081228

(Super.Ct.No. UDCO2201065)

OPINION

APPEAL from the Superior Court of Riverside County. Harold W. Hopp, Judge. Affirmed.

Burton & Swett and Thomas M. Swett for Defendant and Appellant.

Jeffer Mangels Butler & Mitchell, Dan P. Sedor, and Susan Allison for Plaintiff and Respondent.

In 2017, the parties entered a lease agreement allowing defendant and appellant Quality Aggregates (Quality) to mine on a property owned by plaintiff and respondent Riverside Mining Limited (Riverside Mining). The business relationship soured, and litigation began. This appeal contests two orders issued after Riverside Mining voluntarily dismissed this unlawful detainer action. One is an order denying Quality's

motion for attorney fees under Code of Civil Procedure section 998, and the other an order granting Riverside Mining's motion to disburse to it certain payments Quality had deposited with the court.[1] We affirm both orders.

FACTS

Riverside Mining owns a property of more than 150 acres in Jurupa Valley. In 2017, Quality leased about 73 acres that the parties call the Pyrite Quarry. The lease agreement includes a provision shifting attorney fees to the prevailing party in any "action . . . , either at law or in equity, to enforce or interpret the terms" of the agreement.

According to Quality, by 2020, Riverside Mining began infringing on its leasehold in various ways. In 2021, Quality sued Riverside Mining, alleging breach of contract, trespass, and quiet title claims. (Riv. Sup. Ct. Case No. CVRI 2102802) In August 2022, Riverside Mining filed an unlawful detainer action, seeking to evict Quality from the Pyrite Quarry for various alleged breaches of the lease agreement. This appeal concerns the unlawful detainer lawsuit.

Near the outset of the unlawful detainer lawsuit, the parties filed a stipulation that could help preserve the funds at issue during the litigation. They stipulated under sections 572 and 1170.5 that Quality would deposit with the court amounts "otherwise payable to" Riverside Mining "as monthly rental payments" under the lease agreement. The stipulation explained Riverside Mining's position that Quality's breach of the lease agreement "constitutes forfeiture" of the lease agreement, while Quality's position was it

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

"has not breached nor forfeited the lease agreement" and intended to "continue paying rent." As requested, the court ordered Quality to "deposit with the Clerk of the Court those funds otherwise payable to [Riverside Mining] as monthly rent for the pendency of the above-captioned action."

In November 2022, Quality offered to compromise under section 998, proposing settlement of the unlawful detainer action "by entry of a dismissal with prejudice" of the action, "each party to bear their own attorneys' fees and costs." Riverside Mining did not accept the offer.

In January 2023, after substantial discovery but before trial, Riverside Mining requested the unlawful detainer action be dismissed without prejudice. The trial court entered the dismissal.

Later, Quality filed a memorandum of costs, claiming $118,372.65, a sum that included no attorney fees, but did include costs under section 1032 and the costs of the services of expert witnesses under section 998. The memorandum of costs noted that attorney fees "[w]ill be determined in [a] subsequent noticed motion." Riverside Mining did not object to these costs, paying them in full in May 2023.

Meanwhile, Riverside Mining filed a motion under sections 572 and 1170.5, requesting disbursement to it of the payments Quality had deposited with the court per the September 2022 stipulation. According the motion, the amount deposited totaled $228,000. Quality opposed the disbursement motion.

3

Quality also filed a motion for attorney fees under section 998. Quality requested an award of $199,514.38, based on a 1.25 multiplier. Riverside Mining opposed the fee motion.

The trial court granted Riverside Mining's disbursement motion and denied Quality's motion for attorney fees.

DISCUSSION

A. *Attorney Fees motion*

Quality argues it is entitled to recover attorney fees incurred after its section 998 offer because the lease agreement has a prevailing party attorney fee clause and Riverside Mining failed to obtain a result more favorable than Quality's offer to compromise. The trial court disagreed, applying *Ford Motor Credit Company v. Hunsberger* (2008) 163 Cal.App.4th 1526 (*Ford*). Quality asserts *Ford* was wrongly decided. We are not persuaded.

We apply de novo review to this question of law. (*E.g. Gonzalez v. Lew* (2018) 20 Cal.App.5th 155, 160 ["The application of section 998 to undisputed facts is a legal issue we review de novo"]; *Silver v. Boatwright Home Inspection, Inc.* (2002) 97 Cal.App.4th 443, 448-449 ["The correct application, to this case, of statutory and case authority respecting awards of attorney's fees presents a question of law, which we address de novo"].)

Generally, "[e]xcept as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding." (§ 1032,

4

subd. (b).) "Prevailing party" includes "a defendant in whose favor a dismissal is entered." (*Id.*, subd. (a)(4).) Consequently, after Riverside Mining voluntarily dismissed this lawsuit, it properly paid Quality's costs. (*Mon Chong Loong Trading Corp. v. Superior Court* (2013) 218 Cal.App.4th 87, 93; §§ 581, subd. (b)(1), 1032, subd. (a)(4).)

Attorney fees are not normally recoverable costs. Rather, "[u]nder what is known as the 'American rule,' each party to a lawsuit must ordinarily pay his or her own attorney fees." (*Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 177; see § 1021.) Nevertheless, "recoverable litigation costs . . . include attorney fees . . . when the party entitled to costs has a legal basis, independent of the costs statutes and grounded in *an agreement*, statute, or other law, upon which to claim recovery of attorney fees." (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 606 (*Santisas*) (italics added); § 1033.5, subd. (a)(10)(A) ["items . . . allowable as costs under Section 1032" include "[a]ttorney fees, when authorized by . . . [¶] (A) Contract."].)

Civil Code section 1717 governs the award of attorney's fees as costs in contract actions where the contract has an attorney fee provision.[2] (*Waterwood Enterprises, LLC v. City of Long Beach* (2020) 58 Cal.App.5th 955, 964; see *Santisas*, *supra*, 17 Cal.4th at p. 616 ["A holding that in contract actions there is still a separate contractual right to recover fees that is not governed by [Civil Code] section 1717 would be contrary to . . .

_____

[2] The parties have not disputed that this unlawful detainer action is an action on a contract. Correctly so: "[I]f an unlawful detainer action is based on an alleged breach of the lease during an unexpired term (e.g., nonpayment of rent, improper use of the premises), then it is an action sounding in contract." (*Mitchell Land & Improvement Co. v. Ristorante Ferrantelli, Inc.* (2007) 158 Cal.App.4th 479, 486.)

5

legislative intent"].)  The statute requires any prevailing party attorney fee provision be treated as mutual, regardless of its wording, to "avoid the perceived unfairness of one-sided attorney fee provisions."  (*International Billing Services, Inc. v. Emigh* (2000) 84 Cal.App.4th 1175, 1182; see Civ. Code, § 1717, subd. (a).)  Also, the statute defines "prevailing party" as "the party who recovered a greater relief in the action on the contract."  (Civ. Code, § 1717, subd. (b)(1).)  There may be one prevailing party, or "no party prevailing on the contract . . . ."  (*Ibid.*)

Sometimes, the trial court has discretion to determine who prevailed: "If neither party achieves a complete victory on all the contract claims, it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees."  (*Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1109 (*Scott*).)  Other times, however, the trial court has only one option.  For example, if a party achieves a "'simple, unqualified win'" on a contract claim, the trial court must find that party prevailed.  (*Hsu v. Abbara* (1995) 9 Cal.4th 863, 876.)  Importantly here, Civil Code section 1717, subdivision (b)(2), specifies that "[w]here an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section."  This means that if, as here, a case is dismissed voluntarily, a prevailing party attorney fee clause does not alone permit recovery of attorney fees.

Quality, however, undisputably made a valid section 998 offer to compromise this case.  Where there has been a valid section 998 offer, costs that would otherwise be

awarded to the prevailing party "shall be withheld or augmented" as provided in that section. (§ 998, subd. (a).) The statute provides: "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer." (*Id.*, subd. (c)(1).) Also, in addition to costs ordinarily recoverable under section 1032, section 998 allows the court to award "postoffer costs of the services of expert witnesses." (§ 998, subd. (c)(1).)

If a plaintiff declines a section 998 offer and later voluntarily dismisses the action, the offering defendant may recover not only costs as the prevailing party under section 1032, subdivision (a)(4), but also additional postoffer costs expressly authorized under section 998, namely, expert witness fees, though in the court's discretion. Here, Riverside Mining's costs payment to Quality accordingly included expert witness costs.

Section 998 does not, however, expressly authorize an award of attorney fees. Attorney fees are recoverable as costs only if there is some other statutory or contractual right to such fees. (See, e.g., *LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Association* (2023) 94 Cal.App.5th 1050, 1084, fn. 4 ["Because the relevant statute . . . gave [respondent] no right to recover attorney fees from appellants, Code of Civil Procedure section 998 did not authorize the fee shifting ordered by the court"]; *Mangano v. Verity, Inc.* (2008) 167 Cal.App.4th 944, 951 [discussing award of attorney fees under FEHA, stating "section 998 does not grant greater rights to attorney's fees than those provided by the underlying statute"].)

7

In *Ford,* the court of appeal applied these principles to facts like ours. The plaintiff sued alleging breach of a contract involving a lease agreement that included a unilateral attorney fee clause, made bilateral by Civil Code section 1717, subdivision (a). (*Ford, supra,* 163 Cal.App.4th at pp. 1529, 1533.) The defendant made a section 998 offer, proposing that he "pay nothing and waive his attorney fees and costs in exchange for a dismissal with prejudice." (*Id.* at p. 1530.) The offer was not accepted, but the plaintiff later voluntarily dismissed the action without prejudice. (*Ibid.*) The defendant sought an award of costs, including attorney fees, under Civil Code section 1717 and sections 1032, 1033.5, and 998. (*Ford,* at p. 1530.) The court of appeal held that no award of contractual attorney fees as costs was permissible, as "section 998 does *not* independently create a statutory right to attorney fees." (*Id.* at p. 1532.) Without an independent statutory right to attorney fees, the defendant therefore could recover contractual attorney fees only if authorized under section 1032 and Civil Code section 1717. And that path was "blocked" by Civil Code section 1717, subdivision (b)(2). (*Ford,* at p. 1533.) The court reasoned as follows: "[A] defendant in whose favor a dismissal has been entered can recover his attorney fees as costs '[e]xcept as otherwise expressly provided by statute.'" (*Ibid.,* quoting § 1032, subd. (b).) "The other statute that so provides is subdivision (b)(2) of Civil Code section 1717." (*Ford,* at p. 1533.) The court noted no appellate authority had held Civil Code section 1717, subdivision (b)(2) "trumps [CCP] section 998," but found "a plain reading of the relevant statutes

8

leads to this result." (*Ford*, at p. 1533.)  On that basis, it affirmed the trial court's attorney fees to the defendant.  (*Ibid.*)

Quality does not attempt to distinguish *Ford* but argues that it was wrongly decided.  In Quality's view, *Ford* is "inconsistent" with our Supreme Court's holdings in *Scott*, *supra*, 20 Cal.4th at p. 1103, and *SCI California Funeral Services, Inc. v. Five Bridges Foundation* (2012) 203 Cal.App.4th 549 (*SCI*), which follows *Scott*.  It is not.

*Scott* and *SCI* each considered the apportionment of costs in contract actions where a party rejects its opponent's section 998 offer and obtains a judgment *at trial*, but one less favorable than the offer.  (*Scott*, *supra*, 20 Cal.4th at p. 1106; *SCI*, *supra*, 203 Cal.App.4th at p. 552.)  In both cases, the court held the offeror was entitled to recover postoffer costs, which included attorney fees because of the contracts' attorney fee clauses and Civil Code section 1717.  (*Scott* at pp. 1112-1113; *SCI* at p. 578.)  In that context, even though the offeror was not the prevailing party as defined in section 1032 and Civil Code section 1717, subdivision (b)(1), it was properly "treated for purposes of postoffer costs *as if* it were the prevailing party."  (*Scott* at p. 1114; *SCI* at p. 578.)

Our context is different.  Neither *Scott* nor *SCI* involved a voluntary dismissal, so neither case considered the effect of Civil Code section 1717, subdivision (b)(2).  An appellate decision is authority "only 'for the points actually involved and actually decided.'"  (*Santisas*, *supra*, 17 Cal.4th at p. 620.)

The distinction between a voluntary dismissal (which is a result in a defendant's favor) and a trial (which could result in a judgment in either side's favor) is one of policy.

Civil Code section 1717, subdivision (b)(2), reflects a determination that the American rule that parties bear their own attorney fees should not change where a defendant in a contract action prevails by voluntary dismissal. This policy decision cabins the cost-shifting effect for plaintiffs in contract actions who have rejected a section 998 offer. A voluntary dismissal makes them liable for costs and possibly even expert witness fees, but not contractual attorney fees, while proceeding to trial could lead to an award of attorney fees against them. Such plaintiffs are thereby encouraged "to dismiss pointless litigation . . . rather than maintain it merely to avoid liability for another party's attorney fees." (*Ford*, *supra*, 163 Cal.App.4th 1531.)

*Scott* observed that where the Legislature has decided "to treat prevailing plaintiffs and prevailing defendants differently for purposes of attorney fees and other costs," section 998 "takes these differences as it finds them." (*Scott*, *supra*, 20 Cal.4th at p. 1115, fn. 3.) *Ford*'s holding is consistent with the proposition that section 998 "takes" such differences "as it finds them" (*Scott*, at p. 1115, fn. 3), while Quality's interpretation of the relevant statutes is not.

In the decade and a half since *Ford*, no appellate authority has parted ways with it and interpreted the statutes as Quality proposes. Additionally, section 998 has been amended since *Ford* (see Stats. 2015, ch. 345, § 2, effective Jan. 1, 2016), and the Legislature did not abrogate it. (See *People v. Bouzas* (1991) 53 Cal.3d 467, 475 ["When a statute has been construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the

10

Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute."]; cf. § 998, subd. (c)(2)(B) [expressly abrogating a different court of appeal opinion].)

We hold that the trial court did not err in denying Quality's motion for attorney fees.

B. *Disbursement motion*

The parties dispute whether the trial court should have denied Riverside Mining's motion to distribute to it the funds Quality had deposited with the court, pending determination of a possible "setoff" for Quality for its recoverable costs. This dispute, however, is moot. Riverside Mining has paid all of Quality's recoverable costs excluding attorney fees. The trial court determined, and we here affirm, that Quality may not recover the attorney fees. Even if a setoff for recoverable costs from funds deposited with the court might be appropriate or required if Quality *were* entitled to recover fees, Quality is entitled to no setoff here.

In passing, Quality suggests it might also be entitled to a setoff for a hypothetical "existing judgment" arising from a separate action. "The well-established rule is that we should avoid advisory opinions." (*Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 284; accord *Benitez v. North Coast Women's Care Medical Group, Inc.* (2003) 106 Cal.App.4th 978, 991 ["[A] court should avoid advisory opinions involving hypothetical facts"].) We will adhere to that rule.

11

DISPOSITION

The orders denying Quality's motion for attorney fees and granting Riverside

Mining's motion for disbursement of payments deposited with the court are affirmed.

Riverside Mining is awarded costs on appeal.

CERTIFIED FOR PUBLICATION

RAPHAEL_____
                                                                    J.

We concur:

MILLER_____
          Acting P. J.

CODRINGTON_____
          J.

12